IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DALIX M. JIMENEZ-GONZALEZ, <u>et al.</u>,

    **Plaintiff(s)**

        **v.**

ZOIME ALVAREZ-RUBIO, <u>et al.</u>,

    **Defendant(s)**

**CIVIL NO.** 09-1656 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Pending before the Court is a motion to dismiss filed by Defendants Zoime Alvarez-Rubio ("Alvarez-Rubio"), Saul Rivera-Rivera ("Rivera-Rivera"), Michael A. Quinones-Irizarry ("Quinones-Irizarry"), Enid Ortiz-Rodriguez ("Ortiz-Rodriguez"), and Mario M. Nazario-Oliver ("Nazario-Oliver") (collectively "Defendants"). (Docket No. 27). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

### FACTUAL AND PROCEDURAL BACKGROUND

    Eleven plaintiffs, all former transitory maintenance employees of the Corporation of the State Insurance Fund ("CSIF"), bring the present civil rights suit under 42 U.S.C. § 1983 claiming that they were politically discriminated. Defendants are being sued in their official and personal capacity. Specifically, Plaintiffs assert that their rights under the First and Fourteenth Amendments to the United States Constitution were violated. Plaintiffs also proffer

Civil Case No. 09-1656 (JAG)                                    2

supplemental claims under the laws and Constitution of the Commonwealth of Puerto Rico. Plaintiffs request a declaratory judgment, damages, and injunctive relief.

In their complaint, Plaintiffs Dalix M. Jimenez-Gonzalez ("Jimenez-Gonzalez"), Linnette Rivera-Alicea ("Rivera-Alicea"), Irene Iturrino-Negron ("Iturrino-Negron"), Raul A. Mendez-Mendez ("Mendez-Mendez"), Julio E. Rodriguez-Mendez ("Rodriguez-Mendez"), Edwin Valentin-Hernandez ("Valentin-Hernandez"), Elvin Diaz-Afanador ("Diaz-Afanador"), Diego Aldebol-Vargas ("Aldebol-Vargas"), Andres A. Perez-Santos ("Perez-Santos"), Yanira Torres-Soto ("Torres-Soto"), and David Rivera-Arce ("Rivera-Arce") (collectively "Plaintiffs")[1] allege that they were all employed at the CSIF as transitory maintenance employees for six (6) months. Plaintiffs submit that per the terms of the Collective Bargaining Agreement ("CBA") in place at the CSIF, after six (6) months, their transitory positions were to become permanent career positions, which they would be openly entitled to compete for. According to Plaintiffs, even though they worked at the CSIF for six (6) months, Defendants did not create the career positions. Instead, on March 9, 2009, Plaintiffs were allegedly notified that their temporary contracts would not be renewed.

Plaintiffs submit that Defendants are all members of the New

---

[1] Not included are the other named plaintiffs, which include the spouses and the legal conjugal partnership of several of the above mentioned plaintiffs.

Civil Case No. 09-1656 (JAG)                                    3

Progressive Party ("NPP"). Alvarez-Rubio is the administrator of the CSIF and is the nominating authority for said agency. Defendants Rivera-Rivera, Quinones-Irizarry, Ortiz-Rodriguez, and Nazario-Oliver were all appointed by Alvarez-Rubio. Rivera-Rivera is the Associate Director for Human Resources for the CSIF. Quinones-Irizarry is the Regional Director for the CSIF Arecibo Regional Office. Ortiz-Rodriguez is the Regional Director for the CSIF Caguas Regional Office. Nazario-Oliver is the Regional Director for the CSIF Aguadilla Regional Office.

Plaintiffs aver that they are all active members of the Popular Democratic Party ("PDP"). The PDP is a political adversary of the NPP. According to Plaintiffs, Defendants knew that they were active members of the PDP and because of this, decided not to renew their temporary contracts. Plaintiffs claim that because of their political affiliation, Defendants did not allow them to continue to aspire to a career position with the CSIF. (Docket No. 16).

On December 2, 2009, Defendants moved to dismiss Plaintiffs' claims against them. Defendants contend that Plaintiffs failed to adequately plead a political discrimination claim under the First Amendment and an equal protection claim under the Fourteenth Amendment. Alternatively, Defendants claim that they are entitled to sovereign immunity and qualified immunity. (Docket No. 27). Plaintiffs oppose Defendants' dismissal request. (Docket No. 37).

**STANDARD OF REVIEW**

Civil Case No. 09-1656 (JAG)                                          4

    A. <u>Motion to Dismiss Standard.</u>

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 559). The court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st Cir. 1990). <u>Twombly</u> does not require heightened fact pleading of specifics; however, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." <u>Id.</u> at 555.

In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Supreme Court upheld <u>Twombly</u> and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50. The First Circuit has recently relied on these two principles as outlined by the Court. <u>See</u> <u>Maldonado v. Fontanes</u>, No. 08-2211, 2009 WL 1547737, at *3 (1st Cir. June 4, 2009). "First, the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555).

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. Determining the existence of plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation". Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

## DISCUSSION

Plaintiffs bring the present suit under § 1983. It is well settled law that § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989) (internal citations and quotation marks omitted). Under § 1983, a

Civil Case No. 09-1656 (JAG)                                    6

plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." Destek Group, Inc. v. State of New Hampshire Public Utilities Commission, 318 F.3d 32, 39 (1st Cir. 2003). Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).

Plaintiffs assert that Defendants are all officials of the CSIF, which is an agency of the Commonwealth of Puerto Rico. Moreover, Plaintiffs submit that Defendants acted in their capacity as CSIF officials when they either directly participated, condoned or tacitly authorized: (1) the non-renewal of Plaintiffs' temporary contract and (2) the non compliance with the terms of the CBA, which required the conversion of Plaintiffs' transitory positions to permanent career positions that Plaintiffs would be openly entitled to compete for. We find that Plaintiffs' allegations are sufficient to satisfy the first element of their § 1983 claim. Defendants, nonetheless, argue that the second prong is not satisfied here because Plaintiffs have not properly pled that their rights under the First and Fourteenth Amendment were violated.

Civil Case No. 09-1656 (JAG)                                    7

Moreover, Defendants contend that Plaintiffs have failed to adequately allege facts that would lead us to conclude that the conduct of Defendants was the cause of the alleged constitutional deprivation suffered by Plaintiffs.

This Court finds that the causal connection requirement is minimally satisfied, as Plaintiffs allege that Defendants utilized their positions to ignore the terms of the CBA and remove them from the CSIF because of their political affiliation with the PDP. Furthermore, such requirement is met because Plaintiffs claim that Defendants replaced them with persons affiliated to the NPP. Next, we must address whether Plaintiffs properly pled that they were deprived of their protected rights under the First and Fourteenth Amendments.

1. <u>Political Discrimination</u>

Pursuant to the First Amendment, non-policymaking public employees are protected from adverse employment actions based on their political opinions. <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 9 (1st Cir. 2007). This protection extends to public transitory employees. <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92 (1st Cir. 1997). Hence, a transitory employee's contract cannot be terminated, or unrenewed, on the basis of the employee's political affiliation. <u>Martinez Baez v. Rey Hernandez</u>, 394 F. Supp. 2d 428, 434 (D.P.R. 2005).

To establish a <u>prima</u> <u>facie</u> case of political discrimination in

Civil Case No. 09-1656 (JAG)                                    8

violation of the First Amendment, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. Id. Namely, for purposes of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must properly plead, that: (1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007). "While plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutierrez, 491 F.3d at 9 (internal citations omitted). If a plaintiff establishes a prima facie case of political discrimination, the burden then shifts to the defendant to show that it would have made the same decision as to the plaintiff's employment regardless of the plaintiff's political beliefs. Torres-Martinez v. P.R. Dep't of Corr., 485 F.3d 19, 23 (1st Cir. 2007). After defendants have put forth a nondiscriminatory justification for the challenged action, the plaintiffs may discredit the proffered nondiscriminatory reason. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 153 (1st Cir. 2006).

    The first element of the Plaintiffs' prima facie case has been met, as Plaintiffs have properly alleged that they are active

members of the PDP and that Defendants are members of the NPP.
Furthermore, the third element is easily met because Plaintiffs
allege that their transitory contracts were not renewed and that
they were not allowed to compete for a career position as per the
terms of the CBA. As to the second element, the complaint contains
allegations that raise a plausible inference that the Defendants
knew of only some of the Plaintiffs' political affiliation. First,
Plaintiffs submit that the environment at the CSIF was politically
charged and that fellow co-workers knew what political party
Plaintiffs belonged to. According to Plaintiffs, when the NPP won
the general elections, these employees remained in their positions
or came to occupy high level positions within the CSIF. Plaintiffs
claim that Defendants consulted with these employees before
deciding not to renew their transitory contracts. These general and
conclusory allegations are not sufficient for this Court to infer
that each Defendant knew the political affiliation of each of the
Plaintiffs. Plaintiffs, nonetheless, proffered additional
allegations, some of which, pass Iqbal's sufficiency requirement.

Rodriguez-Mendez alleges that it was brought to the
Defendants' attention that he participated in PDP political
activities with his father, who is the president of an electoral
unit in San Sebastian. Rivera-Alicea alleges that she actively
participated in the campaign of two members of the PDP party.
Rivera-Alicea submits that Defendants saw or heard her involvement

in both campaigns through the media's television and radio coverage. Valentin-Hernandez claims that he has participated in PDP political activities that have been covered by the media. Valentin-Hernandez alleges that Defendants saw or heard his participation in those events. These allegations pass the test for sufficiency. Rivera-Arce states that he is an active member of the PDP and is currently a legislator of the Municipality of Añasco for the PDP. Because Rivera-Arce holds a public office as a PDP municipal legislator, it is reasonable to infer that Defendants know that he is a member of the PDP.

Plaintiffs Jimenez-Gonzalez and Iturrino-Negron alleged that they "had a dispute concerning [their] political affiliation to the PDP and member(s) of the NPP . . . which was brought to the attention of Defendants." This bare allegation is insufficient to push Jimenez-Gonzalez and Iturrino-Negron's claims beyond the pleadings stage. Jimenez-Gonzalez and Iturrino-Negron's bare assertion stops short of the plausibility that Defendants knew that they were members of the PDP. See Iqbal, 129 S. Ct. at 1949 (noting that a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'") (quoting Twombly, 550 U.S. at 557).

Mendez-Mendez alleges that he is a member of the PDP, who has been actively involved in the campaign of the PDP candidate for

mayor of his hometown. Furthermore, Mendez-Mendez avers that since
1984, he has worked as an electoral commissioner, which has been
witnessed by many of his coworkers in the CSIF Aguadilla region.
Mendez-Mendez, however, fails to plead that Defendants witnessed
his involvement in the PDP activities. The allegation that some of
Mendez-Mendez's coworkers witnessed his involvement in the PDP
campaigns is not sufficient to show that Defendants knew of his
party affiliation. This Court cannot infer that such knowledge
"automatically passed" on to Defendants and, as such, they were
aware of Mendez-Mendez's political affiliation.

Aldebol-Vargas and Perez-Santos's proffered nearly identical
allegations to show that Defendants knew that they are PDP members.
Both assert that "[they] [are] active member[s] of the PDP party,
a fact known by the defendants." Such allegation is conclusory and,
therefore, cannot be considered. Aldebol-Vargas and Perez-Santos
also stated that their fathers are employed at the CSIF, and are
known by Defendants to be active members and leaders of the PDP.
Such allegation is also insufficient to sustain Aldebol-Vargas and
Perez-Santos's burden of demonstrating that Defendant knew that
they are members of the PDP. We cannot reasonably infer that
because Defendants knew that Aldebol-Vargas and Perez-Santos's
fathers are members of the PDP, Defendants believed that both
Plaintiffs are PDP members. Aldebol-Vargas and Perez-Santos also
submit that at work, they were the subject of jokes and comments

due to their political affiliation. Aldebol-Vargas and Perez-Santos, however, do not state that Defendants were the ones who proffered the jokes and comments. This general allegation is insufficient to carry both Plaintiffs' burden on this element.

Torres-Soto alleges that she has been an active member of the PDP party since 2003 and has worked coordinating school units during elections and in the campaign of two PDP candidates for public office. Torres-Soto did not allege that the Defendants witnessed or found out by other means Torres-Soto's participation in such PDP activities. Torres-Soto did allege that her husband's active participation in PDP activities was witnessed or heard by the Defendants. Nevertheless, we cannot infer that Defendants regarded Torres-Soto as a PDP member because they knew of her husband's political affiliation with the PDP. Torres-Soto also contends that her mother works for the CSIF in the Mayaguez region and is a PDP legislator for the Municipal Legislature of Añasco. This Court cannot infer that Defendants knew that Torres-Soto is a PDP member because her mother is a PDP legislator. Finally, Torres-Soto proffers that during her period of employment, her supervisor Emma Muriel ("Muriel") and "others" subjected her to comments due to her political affiliation. Namely, she was on various occasions told that when Governor Fortuño, a member of the NPP party, won she would have to leave. Torres-Soto also claims that Muriel indicated to her that she should not use all of her vacation and sick pay so

her liquidation would be for a larger amount of money. According to Torres-Soto, Muriel also told her that a certain factory was hiring and that she should apply there for work. These comments are sufficient for us to infer that Muriel knew of Torres-Soto's political affiliation. Nonetheless, they are not sufficient for us to infer that Defendants Alvarez-Rubio, Rivera-Rivera, Quinones-Irizarry, Ortiz-Rodriguez, and Nazario-Oliver knew of Torres-Soto's political affiliation. Torres-Soto's allegation that in addition to Muriel, "others" proffered such comments is not sufficiently fact specific for this Court to conclude that said Defendants knew Torres-Soto was a PDP member. Muriel is not a Defendant in this case. Nevertheless, Muriel is alleged to be a supervisor in the CSIF. As such, Defendant Alvarez-Rubio could be found to be liable as a supervisor of Muriel. Thus Torres-Soto's claims against Alvarez-Rubio as of yet survive dismissal.

Diaz-Afanador stated that he is an active member of the PDP and was a Ward President for the PDP. This allegation is too general and, therefore, not sufficient for us to infer that Defendants knew that he was a member of the PDP. Diaz-Afanador further alleges that Defendant Quinones-Irizarry indicated to him that he would stay with the CSIF despite his political affiliation to the PDP. This allegation is certainly sufficient to show that Quinones-Irizarry knew of Diaz-Afanador's political affiliation. Nevertheless, it is not sufficient for this Court to find that

Alvarez-Rubio, Rivera-Rivera, Ortiz-Rodriguez, and Nazario-Oliver knew of Diaz-Afanador's political affiliation. Alvarez-Rubio is Quinones-Irizarry's supervisor. Hence, Diaz-Afanador's may still have a claim for supervisor liability against Alvarez-Rubio. Consequently, Diaz-Afanador's claims against Defendants Quinones-Irizarry and Alvarez-Rubio will not be dismissed. Diaz-Afanador's claims against Defendants Rivera-Rivera, Ortiz-Rodriguez, and Nazario-Oliver must be dismissed.

Plaintiffs Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, and Valentin-Hernandez' allegations have satisfied three of the four elements of their _prima_ _facie_ case. Mendez-Mendez, Aldebol-Vargas, Perez-Santos, Jimenez-Gonzalez, and Iturrino-Negron failed to proffer allegations that would lead this Court to reasonably infer that Defendants knew that they were PDP member. Consequently, their claims under the First Amendment must be dismissed. Torres-Soto has so far satisfied her _prima_ _facie_ burden only as to Defendant Alvarez-Rubio. Diaz-Afanador has fulfilled three of the elements of his _prima_ _facie_ burden as to Alvarez-Rubio and Quinones-Irizarry.

Next, we must determine whether the remaining Plaintiffs have made a fact specific showing of discriminatory animus. In doing so, we are mindful of the fact that "[m]ere temporal proximity between a change of administration and a public employee's dismissal is insufficient to establish discriminatory animus." _Peguero-Moronta v. Santiago_, 464 F.3d 29, 53 (1st Cir. 2006) (quoting _Acevedo-Diaz_

v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993)). Furthermore, merely juxtaposing that the plaintiff is an active member of the rival political party to that of the defendant is insufficient, standing alone, to create a causal link. Marrero-Gutierrez, 491 F.3d at 10. Likewise, alleging that a plaintiff is a well known supporter of a different political party by itself is not sufficient to show that a challenged employment action was premised upon political affiliation. Gonzalez-De Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004). Moreover, general allegations that a plaintiff was badly treated at work and that his political party was mocked is insufficient to show a causal connection between the adverse employment action suffered by the plaintiff and his political affiliation. See, e.g., Marrero-Gutierrez, 491 F.3d at 10.

Plaintiffs proffer several allegations that support the discriminatory animus element of their political discrimination claim. First, Plaintiffs allege that Defendants replaced them with persons that are members of the NPP. Plaintiffs do not identify who replaced any or all of the Plaintiffs, nor the dates when the alleged replacements occurred. Although this allegation is somewhat general, requiring Plaintiffs to provide the names and dates of the replacements would subject Plaintiffs to a heightened pleading requirement, something which has been rejected by the First Circuit. Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66-67 (1st Cir. 2004). Plaintiffs will, nonetheless, need

Civil Case No. 09-1656 (JAG)                                      16

to provide the names and dates of the replacements in order to survive a summary judgment request by Defendants. See, e.g., Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000) (finding that the plaintiffs' failure in providing the names or other specific factual information supporting their claim that the Municipality replaced them with new hires from the rival political party was patently insufficient to generate a genuine issue of material fact on a causal connection between the political affiliation of the plaintiffs and the adverse employment actions alleged). Second, Plaintiffs attest that Alvarez-Rubio circulated a memo indicating to all regional directors, including Defendants Nazario-Oliver, Ortiz-Rodriguez, and Quinones-Irizarry that they had to generate a document that would justify not renewing Plaintiffs' contracts under the pretext of fiscal difficulties. Both the allegation that Defendants replaced Plaintiffs with NPP members and that instructions were given to not renew Plaintiffs' transitory contracts on the guise of fiscal difficulties raise a plausible inference that Plaintiffs' temporary contracts were not renewed because of their political affiliation.

Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, and Valentin-Hernandez have satisfied all four elements of their prima facie case as to all Defendants. As mentioned above, Torres-Soto was only able to show that Muriel knew of her political affiliation. Because Muriel is not a Defendant in the case at bar, the only way that

Torres-Soto's avoids being dismissed from this case is if she has pled sufficient facts to show that Alvarez-Rubio can be held liable as the supervisor of Muriel. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat superior</u>." <u>Iqbal</u>, 129 S. Ct. at 1948. Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions. <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 48 (1st Cir. 1999). Hence, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution <u>Iqbal</u>, 129 S. Ct. at 1948. Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. <u>See</u> <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 44 (1st Cir. 1999).

For purposes of liability pursuant to § 1983, a supervisor is defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior. <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 6-7 (1st Cir. 1998). Basically, a supervisor can be held liable under § 1983 if she formulates a policy or engages in a practice that leads to a civil rights violation committed by another. <u>Id.</u> at 7. Absent direct participation, a supervisor may be held liable under § 1983 in either his official or personal capacity for the behavior of his

subordinates if both: (1) the behavior of her subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (internal citation and quotation marks omitted); Rodriguez-Oquendo v. Toledo-Davila, 39 F. Supp. 2d 127, 134 (D.P.R. 1999).

First, we address whether Plaintiffs properly pled that Muriel politically discriminated against Torres-Soto. In the complaint, Plaintiffs did not allege that Muriel was involved in the non-renewal of their contracts. Hence, Plaintiffs have failed to allege that there is a causal connection between Muriel's conduct and the alleged deprivation of their rights under the First Amendment. Consequently, Alvarez-Rubio cannot be held liable for Muriel's acts. As a result, Torres-Soto's claims under the First Amendment must be dismissed.

Diaz-Afanador has properly plead all four elements of his prima facie case as to Quinones-Irizarry: (1) Diaz-Afanador is a PDP member, while Quinones-Irizarry is a member of the NPP; (2) Quinones-Irizarry knew that Diaz-Afanador was a PDP member; (3) Diaz-Afanador's transitory contract was not renewed; and (4) the non-renewal of Diaz-Afanador's contract was because of his

political affiliation as Quinones-Irizarry replaced him with a member of the NPP. Diaz-Afanador was unable to properly plead that Alvarez-Rubio knew of his political affiliation. Therefore, Diaz-Afanador failed to allege a prima facie case of political discrimination for Alvarez-Rubio's direct participation in the non-renewal of his transitory contracts. As a result, this Court must analyze whether the pleadings establish that Alvarez-Rubio encouraged, condoned, acquiesced or was deliberate indifferent to the political discrimination allegedly perpetrated by Quinones-Irizarry. It is alleged that Alvarez-Rubio was aware that Diaz-Afanador was replaced with an NPP member. Furthermore, Diaz-Afanador submitted that Alvarez-Rubio created a memo justifying the non-renewal of his transitory contract on a lie, i.e. that there was no money to pay for his temporary work. This Court finds that the allegations raise a plausible inference that Alvarez-Rubio encouraged, condoned, acquiesced or was deliberate indifferent to the political discrimination allegedly perpetrated by Quinones-Irizarry.

In sum, Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, and Valentin-Hernandez's First Amendment claims against Defendants cannot be dismissed. Likewise, Diaz-Afanador's claims under the First Amendment against Alvarez-Rubio and Quinones-Irizarry cannot be dismissed. For the reasons discussed above, Torres-Soto, Mendez-Mendez, Aldebol-Vargas, Perez-Santos, Jimenez-Gonzalez, and

Civil Case No. 09-1656 (JAG)                                    20

Iturrino-Negron's claims under the First Amendment must be dismissed. Next, this Court will address whether Plaintiffs properly pled their equal protection claim under the Fourteenth Amendment.

   2. <u>Equal Protection</u>

   Under the Equal Protection Clause of the Fourteenth Amendment, persons similarly situated must be accorded similar governmental treatment. <u>Marrero-Gutierrez</u>, 491 F.3d at 9. In order to establish an equal protection claim, Plaintiffs need to allege facts indicating that, compared with others similarly situated, they were selectively treated "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 910 (1st Cir. 1995). Here, Plaintiffs fail even to implicate this test by failing to make any allegation that persons similarly situated were treated more favorably. Furthermore, Plaintiffs have failed to set forth specific factual allegations distinguishing their equal protection claim from their political discrimination claim. The First Circuit has indicated that a plaintiff's failure to make this distinction is dispositive of the equal protection claim, as that claim is subsumed by the First Amendment claim. <u>Pagan v. Calderon</u>, 448 F.3d 16, 37 (1st Cir. 2006) (holding that "so long as [a plaintiff's] allegations of political discrimination fit within the contours of

the First Amendment, they are, a fortiori, insufficient to ground
a claim that the politically-inspired misconduct violated equal
protection guarantees"). Accordingly, Plaintiffs' claims under the
Fourteenth Amendment must be dismissed.

    3. <u>Sovereign Immunity</u>

      Defendants also moved to dismiss Plaintiffs' official capacity
claims against them on Eleventh Amendment grounds. Plaintiffs
clarified to the Court that the official capacity claims against
Defendants are brought for the sole purpose of obtaining a
declaratory judgment and injunctive relief. Specifically, Plaintiffs
request that this Court declare that Defendants violated their
rights under the United States Constitution and the laws and the
Constitution of the Commonwealth of Puerto Rico. Furthermore,
Plaintiffs request that this Court issue a preliminary and permanent
injunction "reinstating [Plaintiffs] to their respective positions
of eligibility; and prohibiting, restraining and enjoining, the
defendants, agents or anyone acting in concert with them or pursuant
to their orders; or their successors in any representative capacity
from violating [Plaintiffs'] Constitutional rights." Defendants
submit no argument in support of the dismissal of the declaratory
and injunctive relief as specified by Plaintiffs. Because the
Eleventh Amendment does not bar suits in federal court against state
officers for prospective declaratory or injunctive relief,
Plaintiffs Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, Valentin-

Civil Case No. 09-1656 (JAG)                                          22

Hernandez's and Diaz-Afanador's official capacity claims shall not be dismissed. See Ex Parte Young, 209 U.S. 123, 155-56 (1908); Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 24-25 (1st Cir. 2007).

   4. Qualified Immunity

   Defendants submit that the personal capacity claims against them should be dismissed, as they are entitled to qualified immunity. The qualified immunity doctrine shields public officials from civil suits as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). Qualified immunity is a judge-made doctrine that allows public officials to perform discretionary tasks in the public sector without the constant threat of legal liability in their personal capacity. Pagan v. Calderon, 448 F.3d 16, 31 (1st Cir. 2006); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993). In Pearson v. Callahan, 129 S. Ct. 808 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test. Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009). "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation." Id. at 269 (citing Pearson, 129

S. Ct. at 815-16). The second "clearly established" step of the qualified immunity analysis has two aspects. Id. One aspect focuses on "the clarity of the law at the time of the alleged civil rights violation." Id. "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Pearson, 129 S. Ct. at 822. The other aspect focuses on "the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Maldonado, 568 F.3d at 269. Essentially, the relevant inquiry to determine whether the second prong of the qualified immunity test is met is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. (internal citation and quotation marks omitted). "That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Id.

As discussed above, the facts alleged by Plaintiffs Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, Valentin-Hernandez, and Diaz-Afanador make out a violation of a constitutional right under the First Amendment. Furthermore, the case law cited above demonstrates that at the time of the events complained of by Plaintiffs, it was clearly established that  transitory employee's contract cannot be terminated or unrenewed, on the basis of the employee's political affiliation. The Court, however, cannot determine on the basis of

the pleadings alone whether an objective official in Defendants' position would have reasonably concluded that his actions were not a violation of the First Amendment. Hence, the Court holds that based on the pleadings, Defendants are not entitled to qualified immunity on the First Amendment claims against them.

    5. <u>Supplemental Law Claims</u>

    This Court should decline to exercise supplemental jurisdiction over a plaintiff's state law claims when all federal claims are dismissed. <u>See</u> <u>Camelio v. American Federation</u>, 137 F.3d 666, 672 (1st Cir. 1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation") (internal citations omitted). Plaintiffs Torres-Soto, Mendez-Mendez, Aldebol-Vargas, Perez-Santos, Jimenez-Gonzalez and Iturrino-Negron's federal claims shall be dismissed. As such, Torres-Soto, Mendez-Mendez, Aldebol-Vargas, Perez-Santos, Jimenez-Gonzalez and Iturrino-Negron's state law claims shall also be dismissed. Likewise, since Diaz-Afanador's federal claims against Rivera-Rivera, Ortiz-Rodriguez, and Nazario-Oliver shall be dismissed, Diaz-Afanador's state law claims against said Defendants shall also be dismissed.

**CONCLUSION**

    For the reasons stated above, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss. (Docket No. 27).

Torres-Soto, Mendez-Mendez, Aldebol-Vargas, Perez-Santos, Jimenez-Gonzalez and Iturrino-Negron's federal claims shall be dismissed with prejudice and their state law claims shall be dismissed without prejudice. Partial Judgment shall be entered accordingly. Diaz-Afanador's federal claims against Rivera-Rivera, Ortiz-Rodriguez, and Nazario-Oliver shall be dismissed with prejudice. Diaz-Afanador's state law claims against Rivera-Rivera, Ortiz-Rodriguez, and Nazario-Oliver shall be dismissed without prejudice. Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, Valentin-Hernandez, Diaz-Afanador's claims under the Fourteenth Amendment shall be dismissed with prejudice. In sum, Rodriguez-Mendez, Rivera-Alicea, Rivera-Arce, and Valentin-Hernandez's First Amendment and state law claims against Defendants remain pending. Moreover, Diaz-Afanador's First Amendment and state law claims against Alvarez-Rubio and Quinones-Irizarry are still before this Court.

     IT IS SO ORDERED.

     In San Juan, Puerto Rico, this 8th day of February, 2010.


                         S/Jay A. Garcia-Gregory
                         JAY A. GARCIA-GREGORY
                         United States District Judge