IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DALIX M. JIMÉNEZ-GONZÁLEZ, et. al.,

Plaintiffs,

v.                                          CIVIL NO.: 09-1656 (MEL)

ZOIMÉ ÁLVAREZ-RUBIO, et. al.,

Defendants.

## OPINION AND ORDER

### I.   PROCEDURAL POSTURE

Pending before the court is a motion for summary judgment filed by defendants Zoimé Álvarez-Rubio ("Álvarez-Rubio"), Saúl Rivera-Rivera ("Rivera-Rivera"), Michael A. Quiñones-Irizarry ("Quiñones-Irizarry"), Enid Ortiz-Rodríguez ("Ortiz-Rodríguez"), and Mario M. Nazario-Oliver ("Nazario-Oliver"), all appearing in both their individual and official capacities, (Dkt. No. 93), plaintiffs' response (Dkt. No. 109), and defendants' reply (Dkt. No. 117).

This action was originally filed on July 14, 2009 by eleven plaintiffs, all former transitory maintenance employees of the State Insurance Fund Corporation ("SIFC"), and their respective conjugal partnerships, under 42 U.S.C. § 1983, alleging violations of their rights under the First and Fourteenth amendments to the United States Constitution.  (Dkt. No. 1).  Specifically, plaintiffs claimed that because they were of opposing political affiliations, defendants did not renew their temporary employment contract nor did they give them the opportunity to apply for permanent career positions as per an applicable collective bargaining agreement.  (Dkt. No. 1).  Plaintiffs asserted that these actions violated their First Amendment right to be free from political discrimination and their Fourteenth Amendment rights to equal protection and due process of law.  (Dkt. No. 1).  Plaintiffs

also included supplemental claims under the laws and Constitution of the Commonwealth of Puerto Rico.  (Dkt. No. 1).

On December 2, 2009, defendants filed a motion to dismiss, (Dkt. No. 72), which the court granted in part and denied in part.  (Dkt. No. 40).  Specifically, the court dismissed all eleven plaintiffs' equal protections claims because they failed to factually allege that defendants provided more favorable treatment to persons similarly situated to them.  (Dkt. No. 40); 638 F. Supp. 2d at 187.  Moreover, because plaintiffs failed to set forth any facts distinguishing their equal protection claim from their First Amendment claim, the court held that the latter claim incorporated the former one, thereby disposing of it.[1]  Id.

With respect to the First Amendment claims, the court held that six of the plaintiffs, Yanira Torres-Soto, Raúl Méndez-Méndez, Diego Aldebol-Vargas, Andrés Pérez-Santos, Dalix Jiménez-González, and Irene Iturrino-Negrón, did not plead sufficient facts to establish a plausible political discrimination claim, and thus dismissed their claims.  Id.  Of the remaining plaintiffs, four of them–Julio Rodríguez-Méndez ("Rodríguez-Méndez"), David Rivera-Arce ("Rivera-Arce"), Edwin Valentín-Hernández ("Valentín-Hernández"), and Linnette Rivera-Alicea–properly plead a prima facie case as to all defendants.[2]  Id.  Plaintiff Elvin Díaz-Afanador ("Díaz-Afanador") made out a prima facie claim only as against defendants Álvarez-Rubio and Quiñones-Irizarry, and thus his claims against the other three defendants were dismissed.  Id.  Additionally, the court dismissed the

---

[1] Plaintiffs' original complaint only mentioned their due process claim in their prayer for relief, but did not set forth any due process allegations under their listed causes of action.  (Dkt. No. 1, P. 15-16).  Defendants did not move the court to dismiss the due process claim, only mentioning it in a brief footnote.  (Dkt. No. 27,  p. 11, n. 8).  Accordingly, the court's opinion on the motion to dismiss did not address plaintiffs' due process claim.  When plaintiffs filed their second amended complaint, they included a specific claim that their due process rights were violated.  (Dkt. No. 64).

[2] Linnette Rivera-Alicea subsequently moved for voluntary dismissal of all her claims against all defendants, which this court granted on August 31, 2011.  (Dkt. No. 108).

supplemental state law claims brought by the six plaintiffs whose federal claims were dismissed.

Id.

Subsequently, plaintiffs filed a second amended complaint (Dkt. No. 64), to which defendants responded by filing a motion for summary judgment. (Dkt. No. 70). Plaintiffs filed a motion opposing summary judgment and requesting a case management order and discovery schedule pursuant to Federal Rule of Civil Procedure 56(f). (Dkt. No. 73). The court denied defendants' motion for summary judgment without prejudice to allow the parties to conduct discovery and thus granted plaintiffs' Rule 56(f) motion. (Dkt. No. 78). Defendants subsequently answered the second amended complaint (Dkt. No. 80), and the court proceeded to enter a case management order and set deadlines for discovery.[3] (Dkt. Nos. 81, 86).

On July 15, 2011, immediately after the close of discovery, defendants moved once more for summary judgment. (Dkt. No. 93). On August 31, 2011, plaintiffs filed their response in opposition (Dkt. No. 109), and defendants subsequently filed a reply. (Dkt. No. 117).

## II.   SUMMARY OF UNCONTESTED FACTS

For purposes of the pending motion, the following facts are not in dispute.[4] Rodríguez-

---

[3] All discovery related to the issues set forth in defendants' summary judgment motion was to conclude on July 14, 2011. (Dkt. No. 86). No further discovery was to take place until September 30, 2011, at which point, if the motion had not yet been ruled upon or had been denied, the parties could conduct any further necessary depositions until October 13, 2011. (Dkt. No. 86).

[4] In accordance with Local Rule 56(b), defendants submitted a concise statement of material facts, supported by their own affidavits and supporting documents issued by the government of the Commonwealth of Puerto Rico and by the SIFC. (Dkt. No. 93-1). Plaintiffs filed an opposing statement of material facts that admits the majority of defendants proposed facts, and includes forty additional proposed facts. (Dkt. No. 109-1). Plaintiffs' supporting evidence consists entirely of their own declarations under penalty of perjury and their answers to defendants' interrogatories. (Dkt. No. 109). Plaintiffs' declarations are, for the most part, verbatim recitations of their answers to interrogatories, and their forty proposed facts essentially reproduce each plaintiff's declaration in full. (Dkt. 109-1, p. 36-62). Many of the statements in plaintiffs' declarations are inadmissible hearsay and thus cannot be considered in evaluating the motion for summary judgment. See Vázquez v. López-Rosario, 134 F.3d 28, 33 (1st Cir. 1998) ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment."). Many other statements violate Federal Rule of Civil Procedure 56(c)(4)'s mandate that declarations submitted to support or oppose summary judgment "must be made on personal knowledge." See also Fed. R. Evid. 602 ("A witness may not testify to

Méndez, Rivera-Arce, Valentín-Hernández and Díaz-Afanador are active members of the Popular Democratic Party ("PDP").  (Dkt. Nos. 93-1, ¶ 28; 109-1, ¶ 28).  Plaintiffs allege that all five defendants are members of the New Progressive Party ("NPP").  (Dkt. No. 64, ¶ 1).

All four plaintiffs worked for the SIFC under temporary employment contracts, in the position of Maintenance Employee I, from September 3, 2008 until March 15, 2009.  (Dkt. Nos. 93-1, ¶¶ 21, 22, 24, 26; 109-1, ¶¶ 21, 22, 24, 26).  Plaintiff Rodríguez-Méndez worked in the Aguadilla office, plaintiff Rivera-Arce worked in the Mayagüez office and plaintiffs Valentín-Hernández and Díaz-Afanador worked in the Arecibo office.  (Dkt. Nos. 93-1, ¶¶ 21, 22, 24, 26; 109-1, ¶¶ 21, 22, 24, 26).  Plaintiffs' initial contracts expired in mid-January 2009, but they were extended twice for additional one-month terms until March 15, 2009.  (Dkt. Nos. 93-1, ¶ 16; 109-1 ¶ 16).

Defendants are employees holding supervisory and management positions with the SIFC.  (Dkt. Nos. 93-1, ¶¶ 2-4, 6-9; 109-1, ¶¶ 2-4, 6-9).  Defendant Álvarez-Rubio is the Administrator of the SIFC, a position she has held since January 2, 2009.  (Dkt. Nos. 93-1 ¶ 2; 109-1, ¶ 2).  As part of her responsibilities as SIFC Administrator, Álvarez-Rubio has developed and implemented a comprehensive reform of the SIFC to improve its services and reduce the cost of premiums.  (Dkt.

---

a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  As such, these statements have been disregarded.  Defendants ask that plaintiffs' statements under penalty of perjury be stricken from the record in their entirety because they claim they were "created and signed by plaintiffs with the purpose of creating sham issues of fact."  Defendants point out that plaintiffs signed their statements on the same date that defendants filed their second motion for summary judgment and say they are "self serving."  (Dkt. No. 117, P. 4.)  In Cordero-Suárez v. Rodríguez, 09-1586 (PG), 2011 WL 2974755, at *3 (D.P.R. Jul. 21, 2011), which defendants cite in support of their request, the plaintiff also submitted an allegedly self-serving statement, signed after defendants had filed their summary judgment motion.  The chief concern in that case, however, was that the plaintiff's statement conflicted with her previous deposition testimony.  Id. at *3-*4; see also Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony has changed.").  That is not the case we have here.  Plaintiffs' sworn statements, in fact, reproduce their answers to interrogatories nearly verbatim and defendants have not presented any depositions of plaintiffs that conflict with their statements.  (In fact, neither party has presented any deposition testimony at all.)  Therefore, the court declines to strike plaintiffs' statements entirely and will consider those portions that conform with the Federal Rules of Evidence and Federal Rule of Civil Procedure 56(c)(4).

Nos. 93-1, ¶ 10; 109-1, ¶ 10).  Defendant Rivera-Rivera is the Associate Director of the Human

Resources Department of the SIFC, a position that he has held since January 8, 2009.  (Dkt. Nos. 93-

1, ¶ 3; 109-1, ¶ 3).  His responsibilities include directing all functions of the SIFC Human Resources

Department and advising Álvarez-Rubio with respect to human resources matters.  (Dkt. Nos. 93-1,

¶ 3; 109-1, ¶ 3).    Defendants Quiñones-Irizarry, Nazario-Oliver, and Ortiz-Rodríguez are the

Regional Directors of the SIFC at, respectively, Arecibo, Aguadilla, and Caguas.  (Dkt. Nos. 93-1,

¶¶ 4, 6, 8; 109-1, ¶¶ 4, 6, 8).

On January 8, 2009, the Governor of the Commonwealth of Puerto Rico, Luis Fortuño,

promulgated an Executive Order requiring government agencies to take certain fiscal austerity

measures, including the non-renewal of any temporary employment contracts upon their expiration.

(Dkt. Nos. 93-1, ¶ 11; 109-1, ¶ 11).  The order also contained a prohibition against creating any new

permanent career positions.  (Dkt. Nos. 93-1, ¶ 13; 109-1, ¶ 13).  A subsequent Executive Order,

issued on February 6, 2009, clarified that the state agencies covered by the previous Executive Order

included public corporations, such as the SIFC.  (Dkt. No. 93-1, ¶ 14).[5]

To comply with the Executive Order, Álvarez-Rubio gave instructions not to renew different

temporary employment contracts, including those of the SIFC's temporary maintenance employees.

(Dkt. No. 93-1, ¶ 15).[6]  Those contracts were to expire in mid-January.  (Dkt. Nos. 93-1, ¶ 16; 109-1

---

[5] Plaintiffs deny this fact, stating that "despite of [sic] Defendant [ ] Álvarez-Rubio's interpretation of Executive Order 2009-003, the reason given was pretextual, because there were impermissible discriminatory motives caused by all Defendants that were the real reason for Plaintiffs [sic] termination."  (Dkt. No. 109-1, ¶ 14).  This statement is a legal conclusion, not a fact, and is unsupported by the evidence that plaintiffs cite.  See discussion, infra, Part III.B.2  Moreover, it does not controvert defendants' supporting evidence: a copy of the Executive Order (accompanied by a certified translation), clearly stating that the "intention of this executive order was to apply it to the public corporations of the Commonwealth of Puerto Rico," leaving no room for interpretation.  (Dkt. No. 93-4, p. 2).

[6] Once again, plaintiffs' deny this fact stating that "despite of Defendant [ ] Álvarez-Rubio's implementation of Executive Order 2009-003, the reason given was pretextual . . . ."  (Dkt. No. 109-1, ¶ 15).  This is also a legal conclusion which plaintiffs' evidence does not support.  See discussion, infra, Part III.B.2.

¶ 16).  However, at that time, the Puerto Rico police were investigating suspected criminal activities by SIFC employees, including maintenance employees, and had placed an undercover police officer in a group of temporary maintenance employees.  (Dkt. No. 93-1, ¶ 16).  The police requested that all temporary maintenance employee contracts be extended while the investigation was completed.[7] (Dkt. No. 93-1, ¶ 16).  The contracts were thus extended until mid-March 2009, when the investigation concluded.  (Dkt. No. 93-1, ¶¶ 16-17).  At that time, Alvarez-Rubio instructed the regional directors not to renew any more temporary maintenance employee's contracts.  (Dkt. Nos. 93-1, ¶¶ 15, 20; 109-1, ¶¶ 15, 20).  That same month, however, the investigation resulted in the arrest of seven employees in the San Juan office, six of which were career maintenance employees.  (Dkt. No. 93-1, ¶ 17).  The loss of these six employees made it necessary to keep on four temporary employees to cover the maintenance needs of the San Juan office.  (Dkt. No. 93-1, ¶ 17).  As such, four temporary maintenance employees, other than plaintiffs, had their contracts extended.  (Dkt. No. 93-1, ¶ 17).  Defendants did not select these four employees, nor did they know them personally, nor did they know their political affiliations.  (Dkt. Nos. 93-1, ¶ 17; 109-1, ¶ 17).[8]  Further, there is no evidence on the record as to the identities of these four employees or their political affiliations.

---

[7] Plaintiffs argue that the evidence defendants use to support their proposed facts regarding the police investigation (Dkt. No. 93-1, ¶¶ 16-18), Álvarez-Rubio's affidavit, is inadmissible hearsay because it lacks "any specific evidence regarding said alleged facts."  (Dkt. No. 109-1, ¶¶ 16-17).  Hearsay is an out of court statement by a person other than the declarant that is offered for its truth.  Fed. R. Evid. 801(c).  Álvarez-Rubio's statements do not fit this definition.  They are her own first-hand account of events in which she participated, not her re-telling of events that were related to her.  Álvarez-Rubio explains that she was the one who requested funding for the renewal of the maintenance employee contracts at the police department's request.  (Dkt. No. 93-2, ¶ 8).

[8] Plaintiffs deny this fact, but do not address its substance, instead repeating their argument that defendants' evidence regarding the police investigation is hearsay and stating that "there were politically discriminatory remarks by the institutionalized politically charged environment at the SFIC," which were known to defendant Álvarez-Rubio.  (Dkt. No. 109-1, ¶ 17).  The evidence plaintiffs cite, however, does not show that Álvarez-Rubio was aware of any politically discriminatory remarks.  See discussion, infra, Part III.B.2.a.i.  Nor does plaintiffs' assertion  controvert defendants' evidence regarding the selection and extension of the four temporary maintenance employees' contracts.  (Dkt. Nos. 93-1, ¶ 17; 109-1, ¶ 17).

Neither defendants nor plaintiffs cite any other instances of temporary maintenance employees whose contracts were extended past March 15, 2009. Furthermore, plaintiffs were not replaced by new employees; rather, their duties were assigned to permanent career employees already working with the SIFC. (Dkt. No. 93-1, ¶ 31).[9]

Defendants Ortiz-Rodríguez, Nazario-Oliver and Quiñones-Irizarry had the responsibility of notifying the temporary maintenance workers under their supervision that their contracts would not be renewed. (Dkt. Nos. 93-1, ¶¶ 5, 7, 9; 109-1, ¶¶ 5, 7, 9). It is uncontested that Ortiz-Rodríguez and Nazario-Oliver did not participate in the decision not to renew the contracts. (Dkt. Nos. 93-1, ¶¶ 5, 7, 9; 109-1, ¶¶ 7, 9).

## III.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Summary judgment shall be granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[10] "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)). The party moving for summary judgment bears the burden of showing the absence of a

---

[9] Although plaintiffs deny this fact, they do not address its substance, stating simply that "an institutionalized discrimination based on political affiliation exists in the SIFC" and making generalized assertions about political discrimination within the SIFC. (Dkt. No. 109-1, ¶ 31).

[10] Rule 56 was amended effective December 1, 2010, after the present suit was filed. However, "[t]he substantive standard for summary judgment remains unchanged." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 n.5 (1st Cir. 2011). Therefore, since the application of the amended rule to the present case would be "feasible" and would not work an "injustice," Rule 56, as amended, shall govern the determination of the parties' motions. Farmers Ins. Exch., 632 F.3d at 777 n.4 (citing 28 U.S.C. § 2074(a)).

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment.  McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995); see also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) ("[P]laintiffs must point, if not to fire, at least to some still warm embers; smoke alone is not enough to force the defendants to a trial . . . .").  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute."   McCarthy 56 F.3d at 315.

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ."  Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).  Moreover, "[e]vidence that would be inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment."  Vázquez v. López-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).  Similarly, any affidavits or declarations submitted to in support of or to oppose the motion "must be made on personal knowledge [and] set out facts that would be

admissible in evidence . . . ."  Fed R. Civ. P. 56(c)(4)

**B.      Plaintiffs' Claims under 42 U.S.C. § 1983**

Section 1983 itself does not confer substantive rights, but allows individuals to vindicate substantive rights conferred by the United States Constitution and federal laws through a civil action in federal court.  Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  The statute's purpose is "to interpose the federal courts between the States and the people, as guardians of the people's federal rights."  Mitchum v. Foster, 407 U.S. 225, 242 (1972).

In order for a claim to be cognizable under Section 1983, the complaining party must allege that the conduct complained of was committed by a person acting "under color of state law," and that such conduct caused a deprivation of a constitutional or federal statutory right.  See Parratt v. Taylor, 451 U.S. 527, 535-536 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Martínez-Vélez v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990).  To establish the second prong the plaintiff must demonstrate two things: (1) an actual deprivation of a federally protected right; and (2) a causal connection between the defendant's own conduct and the deprivation of that right.  Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).

The parties here do not dispute that any allegedly unconstitutional action taken by defendants was taken "under color of law," as the SIFC is a public corporation created by the laws of the Commonwealth of Puerto Rico.  It must be determined, then, whether a jury could conclude that defendants' own actions deprived plaintiffs of their First and Fourteenth Amendment rights.  Specifically, each plaintiff must show that each defendant played a personal role in the allegedly

unconstitutional action. See López-Sánchez v. Vergara-Agostini, 359 F. Supp. 2d 48, 52 (D.P.R. 2005); cf. Ashcroft v. Iqbal 556 U.S. 662 (2009) ("In a § 1983 suit . . . masters do not answer for the torts of their servants . . . each Government official . . . is only liable for his or her own misconduct.").

### 1.    Plaintiffs' Due Process Claims

The Due Process clause of the Fourteenth Amendment to the United States Constitution prohibit states from "depriv[ing] any person of life, liberty, or property without due process of law." A property interest in public employment is created only if "existing rules or understandings" that "stem from an independent source such as state law" create a reasonable expectation that employment will continue. Dávila Alemán v. Feliciano Melecio, 992 F. Supp. 91, 96 (D.P.R. 1997) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); citing Bishop v. Wood, 426 U.S. 341 (1976)).  Plaintiffs claim that they were deprived of their property interest in employment at the SIFC because (1) their contracts were not renewed, and (2) they were not given an opportunity to apply for a career position.  (Dkt. No. 64, ¶ 114).

Plaintiffs admit that their employment at the SIFC terminated when their temporary employment contracts expired.  (Dkt. No. 64, ¶ 1).  As contractual employees, any reasonable expectation of continued employment that plaintiffs had was limited to the length of their fixed contract terms.  See Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989) ("[T]he Supreme Court of Puerto Rico has made it clear that the law of Puerto Rico does not give persons who hold 'transitory' jobs . . . any expectation of continued employment beyond the time their yearly appointments expire.").  Morever, even if the contract had been renewed previously, that renewal "does not create

10

a property interest in the continued renewal of those contracts." <u>Dávila Alemán</u>,  992 F. Supp. at 96;

<u>see</u> <u>Vázquez v. Aponte Roque</u>, 678 F. Supp. 37 (D.P.R. 1988) ("[W]here . . . a transitory employee

is discharged at the time his transitory position expires, a mere subjective expectancy that his

employment would continue from year to year indefinitely creates no property interest in

employment . . . .") (citations omitted).  Therefore, plaintiffs had no property interest in retaining

their transitory positions after their contract terms expired.

Plaintiffs also assert that "an applicable collective bargaining agreement" ("CBA") provides

that a temporary position that "remains open for a period of six (6) months must be made a career

position and the persons occupying the position must be afforded the opportunity to compete for the

position."[11]   (Dkt. No. 64, ¶¶ 1, 94, 114).  They claim that the opportunity to compete for these

positions is a property right entitled to protection under the due process clause.  (Dkt. No. 64, ¶ 114).

However, there is absolutely no evidence in the record regarding the collective bargaining agreement

that is the alleged source of this right.[12]  Plaintiffs' complaint is the only document before the court

indicating that the agreement existed and guaranteed transitory employees the right to apply for a

career position after six months, (Dkt. No. 64, ¶¶ 1, 94, 114); at the summary judgment stage more

is required than mere allegations.

Even accepting these allegations as true, plaintiffs point to no evidence showing that any

permanent positions were in fact created.  Nor have they cited any authority for the proposition that

---

[11] Plaintiffs also claim that the personnel regulations of the SIFC also create this "unequivocal right . . . to be afforded the opportunity to compete for permanent career positions."  (Dkt. No. 64, ¶ 114.)  Plaintiffs have not pointed to any specific regulation nor any section of the laws of the Commonwealth of Puerto Rico that provides such a right.

[12] In their declarations, plaintiffs say only that they were denied the opportunity to apply for career positions "as required by the CBA," but do not elaborate as what the CBA specifically required.  (Dkt. Nos. 109-2, ¶ 9; 109-4, ¶ 7; 109-6, ¶ 5; 109-8, ¶ 7).

the right to apply for a job is a property interest within the meaning of the due process clause. Moreover, the fact remains that there is no record evidence–not even a statement in plaintiffs' affidavits–regarding the terms of the collective bargaining agreement.  There is thus no information from which a rational jury could conclude that the agreement created a property interest entitled to due process protections.  The record, therefore, shows no genuine dispute as to whether plaintiffs' due process rights were violated and, accordingly, defendants' motion for summary judgment on plaintiffs' Fourteenth Amendment claim is GRANTED.[13]

### 2.  Plaintiffs' First Amendment Claims

While transitory employees do not have a Fourteenth Amendment due process right to continued employment, the First Amendment does protect them from adverse employment actions taken on the basis of their political affiliation.  Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997) (citing Elrod v. Burns, 427 U.S. 347 (1976)); Figueroa v. Aponte-Roque, 864 F.2d 947 (1st Cir. 1989)).  Therefore, transitory employees whose contracts are not renewed due to political discrimination may sue for a violation of their First Amendment rights under section 1983. Martínez-Baez v. Rey-Hernández, 394 F. Supp. 2d 428, 434 (D.P.R. 2005).

The Supreme Court has set out a tripartite burden shifting test in cases of political discrimination.  Cruz-Baez, et. al. v. Negrón-Irizarry, et. al., 360 F. Supp. 2d 326, 339 (D.P.R. 2005) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The plaintiff bears the initial burden to establish a prima facie case of political discrimination by showing that political affiliation was the motivating factor for the adverse employment action.  Id.  Then, the

---

[13] Plaintiffs' second amended complaint once again alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 64).  As this court already dismissed plaintiffs' equal protection claims (Dkt. No. 40), it need not address them here.

burden shifts to the defendant to show, by a preponderance of the evidence, that the decision to take the action "would have been made regardless of the employee's political affiliation," commonly known as the "Mt. Healthy defense." Id. Finally, if the defendant's proffered reason is "credible and nondiscriminatory," then the burden shifts back to the plaintiff to show that such reason is merely pretextual and that "political affiliation was 'more likely than not a motivating factor.'" Id. (quoting Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (emphasis in original).

### a. Plaintiffs' Prima Facie Case

To establish a prima facie case, the first part of the burden shifting test, a plaintiff must show that "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's . . . . affiliation; (3) . . . a challenged employment action [occurred]; and (4) political affiliation was a substantial or motivating factor behind it." Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007) (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006)) (alterations in original). Each plaintiff's sworn statement indicates that he is a PDP member, thereby establishing the first part of the first element of the prima facie case. (Dkt. Nos. 109-2, ¶ 5; 109-4, ¶ 4; 109-6, ¶ 4; 109-8, ¶ 4). Moreover, defendants do not dispute that the challenged employment action–the non-renewal of plaintiffs' contracts–in fact occurred. The question remains, then, whether plaintiffs have established that (i) defendants are all members of the NPP, (ii) defendants knew that plaintiffs were PDP members, and (iii) plaintiffs' PDP membership was a substantial motivating factor in defendants' decision not to renew plaintiffs employment contracts.

### i. Defendants' NPP membership

In their declarations, plaintiffs cite several instances of anti-PDP remarks made by their SIFC

co-workers, implying that those co-workers were affiliated with the opposing NPP.  (Dkt. Nos. 109-2, ¶ 7; 109-4, ¶ 6; 109-6, ¶ 5; 109-8, ¶ 5).  None of these comments, however, were made by defendants, nor were they made in defendants' presence nor with their acquiescence or approval–with the exception of comments allegedly made by defendant Quiñones-Irizarry.  (See, e.g., Dkt. Nos. 109-2, ¶ 7 (comments made by Mr. Noriega, Sonia Acevedo, Owen Pérez, and Zaida Ruiz); 109-8, ¶ 5 (comment made by Isaac Velásquez)).  Aside from these remarks, plaintiffs present no other admissible evidence indicating that any of the other four defendants are NPP members.[14]

Plaintiffs Valentín-Hernández and Díaz-Afanador allege that Quiñones-Irizarry, who was the regional director of the Aguadilla office where they worked, told them "I don't know why they appointed you in the [SIFC] because when the [NPP] wins we will fire you because all of us know that you are [PDP members]."  (Dkt. Nos. 109-4, ¶ 6(b), 109-6, ¶ 5(a)).  Further, they allege that he expressed hostility towards the PDP because a former PDP governor had fired his aunt and that he made derogatory comments about Ramón Ruiz Nieves, who plaintiffs claim was the former SIFC director and a PDP member.[15]  (Dkt. Nos. 109-4, ¶ 6; 109-6, ¶ 4).  Plaintiffs have therefore presented sufficient evidence for a rational jury to conclude that Quinones-Irizarry was an NPP supporter, but

---

[14] The only other evidence that plaintiffs present are a copy of an article printed from a television news broadcaster's website (WAPA.tv) and the website address for an article from another online news source.  (Dkt. Nos. 109-10; 109-1, ¶ 40).  Because the printed and online articles are in Spanish, and plaintiffs have not provided certified English translations, the articles are not part of the record.  See Local Rule 5(g) ("All documents not in the English language . . . must be accompanied by a certified translation into English . . . ."); Martínez v. Atlantic Coll., 2006 WL 3511596, at *2 (D.P.R. Dec. 5, 2006) (refusing to consider exhibits filed in the Spanish language in ruling on motion for summary judgment) (citing Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 24 (1st Cir. 2006)).  Additionally, news articles are inadmissible hearsay as per Federal Rule of Evidence 801(c), see Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (holding that district court should have stricken newspaper article at summary judgment stage because it was inadmissible hearsay), not to mention the authentication issues raised by evidence printed from the internet or for which only the website address has been provided.  See Fed. R. Evid. 901.

[15] Defendants argue that Díaz-Afanador and Valentín-Hernández's declarations are conclusory, self-serving and replete with hearsay, and should thus be ignored in their entirety.  (Dkt. No. 117-1).  The cited statements, however, are factually specific and based on the plaintiffs' personal knowledge.  Quiñones-Irizarry's alleged statements are not hearsay because he is a defendant in this case.  See Fed. R. Evid. 801(d)(2)(A) (regarding admissions by party-opponents).

they have not done so for the other four defendants.

## ii.  Defendants' knowledge of plaintiffs' PDP membership

Quiñones-Irizarry's statements to Díaz-Afanador and Valentín-Hernanez, also indicate that he knew they were PDP members.  Additionally, Quiñones-Irizarry stated in his own affidavit that he has known Valentín-Hernández for many years and he knows that "at least in the past" he was a PDP member.  (Dkt. No. 93-14, ¶ 5).  However, plaintiffs have not presented any admissible evidence showing that the other four defendants knew that any of the four plaintiffs were PDP affiliates.

Plaintiffs all state that they are politically active PDP members and that they have participated in rallies and campaigns that were covered by the media.  (Dkt. Nos. 109-3, ¶ 12; 109-4, ¶ 4, 109-7, ¶ 12; 109-9, ¶ 12).  The fact that a plaintiff is an active member of a political party, however, does not establish that defendants must have been aware of his political affiliation.  Rivera-Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 176 (D.P.R. 2009); see also González-Di Blasini v. Family Dep't, 377 F.3d 81 (1st Cir. 2004) (finding the fact that plaintiff was a well-known supporter of the opposing party and had held previous trust positions under that party's administration insufficient to establish that defendants knew her political affiliation).  Moreover, the fact that plaintiffs' activities may have been covered in the media is irrelevant unless plaintiffs can show that defendants "actually listened to the radio programs or watched the TV shows."  Febus Cruz v. Sauri-Santiago, 652 F. Supp. 2d 140, 150 (D.P.R. 2009).

Rivera-Arce further states that he holds a position for the PDP in the municipal government of Añasco, as deputy speaker of the municipal assembly.  (Dkt. No. 109-8, ¶¶ 4, 6(b)).  While his political position may indeed place him in the public eye more than the other three plaintiffs, there

is no evidence in the record–or even any allegations–showing that any of the five defendants live or work in Añasco. Nor has Rivera-Arce presented any evidence showing that his political position made him well-known outside of Añasco. Merely holding a position in a municipal assembly is, in and of itself, insufficient to establish that defendants who neither work nor reside in said municipality have knowledge of the political affiliation of every member of the local assembly. And, even if it could be inferred that Rivera-Arce's political position made all of his co-workers aware of his political affiliation, none of the defendants even worked in the same SIFC regional office as Rivera-Arce. (See Dkt. Nos. 109-8, ¶ 2 (Rivera-Arce works at the Mayagüez regional office); 93-1, ¶ 4 (Quiñones-Irizarry is the director of the Arecibo office); 93-1, ¶ 6 (Nazario-Oliver is the director of the Aguadilla office); 93-1, ¶ 8 (defendant Ortiz-Rodríguez is the director of the Caguas office[16]); Dkt. No. 109-8, ¶ 5 (Isaac Velázquez, not a party to this case, is the director of the Mayagüez Office)).

Plaintiffs Rodríguez-Mendéz and Rivera-Arce claim that Álvarez-Rubio's administrative assistant, Enrique Ruiz ("Ruiz"), informed her that they are PDP members. (Dkt. Nos. 109-2, ¶ 7(e); 109-9, ¶ 9). Specifically, they state that Ruiz campaigned for the presidency of the SIFC employee union in October 2008 and promised that if he were elected all temporary positions would become permanent and PDP members would not be fired if the NPP won the elections. (Dkt. Nos. 109-2, ¶ 7(e); 109-9, ¶ 9). Rodríguez-Méndez states that Ruiz met with him in private and specifically made these two promises. (Dkt. No. 109-2, ¶ 7(e). Rivera-Arce states that Wanda Caldas, a nurse employed at the SIFC and a friend of Álvarez-Rubio's, also promised him that if he voted for Ruiz, he would not lose his job. (Dkt. No. 109-9, ¶ 9). The two plaintiffs say that Ruiz

---

[16] In fact, it is difficult to fathom how defendant Ortiz-Rodríguez knew anything about any of the plaintiffs' political affiliation, as none of the plaintiffs worked in the Caguas office. (Dkt. Nos. 93-1, ¶ 8; 109-1, ¶8).

lost the union election, but was later hired to work as Álvarez's administrative assistant.  (Dkt. Nos. 109-2, ¶ 7(e); 109-9, ¶ 9).  They then allege that Ruiz used the information he obtained during his campaign to identify them as PDP members to Álvarez-Rubio.  (Dkt. Nos. 109-2, ¶ 7(f); 109-9, ¶ 9).  Plaintiffs' claim as stated, however, is only speculation.  They provide no facts indicating how they know that Ruiz told Álvarez-Rubio that they are PDP members.  See Fed. R. Civ. P. 56(c)(4) (affidavits and declarations must be based on personal knowledge); Fed. R. Evid. 602 (testimony must be based on personal knowledge).  Moreover, plaintiffs' repetition of statements that Ruiz or other third parties allegedly made are inadmissible hearsay, see Fed. R. Evid. 801(c), as Ruiz is not a party to this action.  See Fed. R. Evid. 801(d)(2)(A) (statements of party opponents are not inadmissible hearsay).  Therefore, plaintiffs' assertion that Ruiz told Álvarez-Rubio about their political affiliations cannot be credited.[17]  Nor can it be assumed Ruiz passed this information to Álvarez-Rubio merely because he worked closely with her.  See Febus Cruz, 652 F. Supp. 2d at 150 ("[K]nowledge [of plaintiff's political affiliation] does not automatically pass to the defendants simply because [plaintiff] names [an individual who knew his political affiliation] a 'confidante' of the three defendants.").

The only plaintiffs who have thus established that defendants knew they were PDP members are Díaz-Afanador and Valentín-Hernández, and only with respect to defendant Quiñones-Irizarry. The record fails to show that the other plaintiffs satisfy the second element of their prima facie case.

---

[17]In one of plaintiffs' previous motions, challenging the dismissal of six of the eleven original plaintiffs' First Amendment claims (Dkt. No. 45), they allege that Ruiz transmitted information to Álvarez-Rubio about plaintiffs' political affiliation, stating that "discovery as to this point may yield exactly how much information was conveyed to her." (Dkt. No. 47, ¶ 11).  Despite having had ample time for discovery, however, plaintiffs have presented no discovery material regarding this point.  The only evidence that they have submitted in support of this allegation are their own declarations and answers to defendants' interrogatories.

### iii.   Political affiliation as a motivating factor

Thus far, then, only Díaz-Afanador and Valentín-Hernández have satisfied the first three elements of their prima facie case, and only as against Quiñones-Irizarry.  Even if all plaintiffs had established the first three elements of their prima face case as to all defendants, however, they cannot establish the final element–that their employment contracts were not renewed due to discriminatory animus.

To satisfy this fourth element, plaintiffs must make "a fact specific showing that a causal connection exists that links the adverse employment action to the plaintiff's politics."  Quinoñes Colón, et. al., v. Calderón, 371 F. Supp. 2d 84, 88 (D.P.R. 2005) (citing Correa-Martínez v. Arillaga-Beléndez, et. al., 903 F.2d 49 (1990).   A "mere temporal proximity between a change of administration and a public employee's dismissal is insufficient to establish discriminatory animus," Acevedo-Díaz et. al., v. Aponte, et. al., 1 F.3d 62, 69 (1st Cir. 1993), as are general allegations that the plaintiff's political party was mocked.  Marrero-Gutiérrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007).   The record does show that defendants Rivera-Rivera and Álvarez-Rubio personally participated in the decision to not renew plaintiffs' employment contracts.  (Dkt. No. 93-1, ¶ 3 (Rivera-Rivera advises Álvarez-Rubio on human resources matters) ¶ 16 (Álvarez-Rubio gave the instructions to not renew the contracts)).  However, plaintiffs have pointed to no evidence showing that their PDP membership was a motivating factor in their decision.[18]

Defendants state that the other three defendants, the directors of three of the SIFC regional offices, played no role in the decision to not renew plaintiffs' employment contracts (Dkt. No. 93-1,

---

[18] Plaintiffs' attempt to support this contention by alleging that they were replaced by NPP members is unavailing because the evidence they present is not based on their personal knowledge, nor is it sufficiently detailed to show that the named individuals actually replaced plaintiffs.  See discussion, infra, Part III.B.2.b.

¶¶ 5, 7, 9).  Plaintiffs admitted this fact as to  Nazario-Oliver and Ortiz-Rodríguez, (Dkt. No. 109-1, ¶¶ 7, 9), and thus cannot establish a prima facie case as to those two defendants.  They dispute, however, that Quiñones-Irizarry played no role in the decision not to terminate Díaz-Afanador's and Valentín-Hernández's contracts. (Dkt. No. 109-1, ¶ 5).  To support their contention, Díaz-Afanador and Valentín-Hernández state that Quiñones-Irizarry convened an employee meeting where he stated that "Álvarez-Rubio gave him the discretion to fire or not people by political reasons," but that he was not going to fire anyone.  (Dkt. Nos. 109-6, ¶ 4(c); 109-4, ¶ 6(e)).  Then, a few weeks later, Quiñones-Irizarry called the two plaintiffs into his office where they received the letter informing them that their employment contracts would not be renewed. (Dkt. Nos. 109-4, ¶ 6(f); 109-6, ¶ 4(d)). Plaintiffs do not indicate whether Quiñones-Irizarry said anything to them at that moment about why their contracts would not be renewed or whose decision it was.  (Dkt. Nos. 109-4, ¶ 6(f); 109-6, ¶ 4(d)).  Quiñones-Irizarry submitted his own affidavit stating that he did not participate in the decision to not renew the contracts, but only notified plaintiffs of that decision.  (Dkt. No. 93-15, ¶ 7). Álvarez-Rubio also states, in her affidavit, that she gave the instruction to the heads of the regional offices not to renew temporary contracts after March 2009.  (Dkt. No. 93-2, ¶¶).  Defendants submitted a copy of the dismissal letters for both employees, which are signed only by Álvarez-Rubio.  (Dkt. No. 93-7, p. 2-3).

While plaintiffs' evidence is sparse, it could lead a jury to conclude that Quiñones-Irizarry chose not to renew Valentín-Hernández and Díaz-Afanador's employment contracts not only because of the directive from the head office, but also because wanted them gone due to their PDP affiliation. See Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (quoting Petitti v.

New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).  Plaintiffs have thus raised an issue of material fact as to whether Quiñones-Irizarry played a role in the decision not to renew their employment contracts.  Nevertheless, defendants' Mt. Healthy defense defeats any prima facie case that plaintiffs Valentín-Hernández and Díaz-Afanador may establish against Quiñones-Irizarry.

### b. Defendants' Mt. Healthy Defense

Defendants have articulated a legitimate, nondiscriminatory reason for not renewing plaintiffs' employment contracts, which plaintiffs have failed to show is pretextual.  Regardless of any political motivation, plaintiffs' temporary contracts would not have been renewed because of the actions the SIFC took to comply with the governor's fiscal austerity plan.  See Acevedo-Díaz, et. al. v. Aponte, 1 F.3d 62 (1st Cir. 1993) ("The Mt. Healthy defense ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action.")

Defendants have presented a copy of Executive Order 2009-001, which unequivocally states that "no agency may . . . renew appointments to temporary or irregular positions upon their expiration without prior written authorization of the Executive Director of the OGEP [Office of Management and Budget]."  (Dkt. No. 93-3, p. 2).  Moreover, defendant Rivera-Rivera, the SIFC's Associate Director of Human Resources, and Álvarez-Rubio, the SIFC Administrator, submitted sworn statements indicating that temporary employment contracts were terminated in accordance with the Executive Order, except those for employees whose services were urgently needed.  (Dkt. Nos. 93-2, ¶ 7; 93-11, ¶¶ 5-6).  Additionally, Rivera-Rivera submitted a signed certification listing the SIFC maintenance employees whose temporary contracts were not renewed after March 15,

2009. (Dkt. No. 93-14). The document lists thirty-two names, including those of the plaintiffs, and almost all of them are, like plaintiffs, classified as Maintenance Employee I. (Dkt. No. 93-14). No evidence revealing the political affiliation of these thirty-two employees other than plaintiffs' has been presented.

None of the temporary maintenance employees working at the SIFC in March 2009 had their contracts renewed except the four employees in the San Juan office who were needed to assume the duties of the six career employees who were arrested. The contracts of Díaz-Afanador and Valentín-Hernández, neither of whom worked in the San Juan office, would not have been renewed regardless of any action that Quiñones-Irizarry took. See Vázquez v. Aponte Roque, 678 F. Supp. 37 (D.P.R. 1988) (granting summary judgment to employer on political discrimination claim where politics "played a part" in adverse employment action against transitory executive director employee, but action was part of a large-scale reform of agency where all transitory executive director positions were abolished). In other words, even if Quiñones-Irizarry had the authority to decide not to renew plaintiffs' employment contracts, and did so for his own discriminatory reasons, he would have had to terminate the contracts anyway because Álvarez-Rubio instructed all regional directors not to renew any temporary employment contracts pursuant to the Executive Order. (Dkt. Nos. 93-2, ¶ 7; 93-5).

Plaintiffs attempt to rebut defendants' Mt. Healthy defense by alleging that defendants replaced them with members of the NPP. (Dkt. No. 64, ¶ 114). As the court stated in its opinion denying defendants' motion to dismiss, plaintiffs "will need to provide the names and dates of the [alleged] replacements in order to survive a summary judgment request by defendants." (Dkt. No. 40, p. 16) (citing Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000)). While some

21

plaintiffs provide information to this effect, it is not sufficient to show that defendants' proffered reason was a mere pretext and that political affiliation was "more likely than not a motivating factor."  See Cruz-Baez, et. al., 360 F. Supp. 2d at 339.

Of the only two plaintiffs who succeeded in establishing a prima facie case (and only against Quiñones-Irizarry), only Díaz-Afanador presents information about the NPP members who allegedly replaced him.  (Dkt. Nos. 109-7, ¶ 8; 109-5, ¶ 8).  In his response to defendants' interrogatories, he says he was replaced by Billy-Moran, Ricardo Medina, and Orlando Rivera, all of whom he claims are NPP members.  (Dkt. No. 109-7, ¶ 8).[19]  However, he does not indicate his basis of knowledge for these assertions.  See Fed. R. Civ. P. 56(c)(4) (affidavits and declarations must be based on personal knowledge); Fed. R. Evid. 602 (testimony must be based on personal knowledge).  Nor does he provide any details as to these alleged replacements.  For example, he does not say whether they were new hires or simply existing permanent employees who assumed his duties, as defendants state in their declarations.  (Dkt. No. 93-1, ¶ 31).  If they were indeed new hires, Díaz-Afanador does not state the date they were hired or what the terms of their employment were.  Without this information, and a proper basis of knowledge for it, Díaz-Afanador's  statement is insufficient to raise a genuine issue of material fact as to whether he was replaced with NPP members.

The information provided by the other two plaintiffs–who, it should be remembered, did not make out a prima facie case as to any of the defendants–presents similar issues.  Rivera-Arce, in response to defendants' requests for interrogatories, provides the names of five individuals who he says replaced him.  (Dkt. No. 109-9, ¶ 8).  He states that one of them is the son of an NPP mayor,

---

[19]  Díaz-Afanador does not provide any further information about the employees who allegedly replaced him in his declaration.  (Dkt. No. 109-6).

that he "thinks" another one's father works with Senator Rivera Schatz.  (Dkt. No. 109-9, ¶ 8).  He says nothing regarding the alleged political affiliations of the other three.  (Dkt. No. 109-9, ¶ 8).  Rivera-Arce does not  provide the details required to show that these five individuals were actually new employees hired to replace his old position.  Nor does he say anything regarding his basis of knowledge for these assertions.  See Fed. R. Civ. P. 56(c)(4) (affidavits and declarations must be based on personal knowledge); Fed. R. Evid. 602 (testimony must be based on personal knowledge).  He does not elaborate on these assertions in his declaration.

The same problems exist for Rodríguez-Méndez.  In his declaration, he claims that there are four employees doing his former duties but does not mention their names or political affiliations.  (Dkt. No. 109-2, ¶ 7(h)).  In his response to defendants' interrogatories provides the names of four individuals, and alleges that two of the four have connections to the NPP.  (Dkt. No. 109-2, ¶ 7(h)).  Like the other three plaintiffs, however, Rodríguez-Méndez does not show that these individuals were newly hired and took over his old position.  Further, he states that two of them were recruited in April and June of 2010, which is over a year after his contract expired.  (Dkt. No. 109-2, ¶ 7(h)).  Finally, Rodríguez-Méndez does not elucidate his basis of knowledge for these alleged facts, neither in his declaration nor his responses to defendants' interrogatories.  See Fed. R. Civ. P. 56(c)(4) (affidavits and declarations must be based on personal knowledge); Fed. R. Evid. 602 (testimony must be based on personal knowledge).

Plaintiffs have not provided any admissible evidence that could lead a rational jury to infer that defendants replaced them with NPP members.  Nor have they provided any other evidence to controvert defendants' explanation for the adverse employment action.  Therefore, they have failed to rebut defendants' Mt. Healthy defense.  See Quiñones-Colón v. Calderón, 371 F. Supp. 2d 84

(D.P.R. 2005) (granting summary judgment to defendants because plaintiffs presented no evidence showing that Police Department's decision not to renew 500 employee contracts due to budget cuts was merely a pretext for discrimination).

In their motion opposing defendants' first summary judgment motion, plaintiffs contended that defendants' proffered justification was pretextual and concealed their true discriminatory motives. (Dkt. No. 73, ¶ 9). Plaintiffs therefore expressed the need conduct discovery as to matters such as the design and implementation of the fiscal austerity plan pursuant to the executive order, the identities of the four temporary employees who were retained as a result of the police investigation, and the NPP affiliates who were allegedly recruited to fill their positions. (Dkt. No. 73, ¶¶ 22, 24, 25). The parties were subsequently granted ample time for discovery. (Dkt. No. 86). Plaintiffs, however have failed to cite any discovery material that could lead a jury to believe that defendants' proffered reason for not renewing their contracts was pretextual.

Because defendants have provided a legitimate, nondiscriminatory reason for the non-renewal of plaintiffs' employment contracts, and plaintiffs have failed to present any evidence to suggest that it was pretextual, defendants' motion for summary judgment is GRANTED and plaintiffs' First Amendment claims are DISMISSED.

### C.    Plaintiffs' Supplementary State Law Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed. See 28 U.S.C. § 1367(c)(3); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. United Mine Workers

24

of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).   Accordingly, plaintiffs state law claims against defendants shall also be DISMISSED WITHOUT PREJUDICE.

## IV.    CONCLUSION

In view of the foregoing, defendant's motion for summary judgment is hereby GRANTED. Plaintiffs' pending federal law claims are DISMISSED WITH PREJUDICE, while their state law claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of November, 2011.

s/Marcos E. López
U.S. Magistrate Judge